Martin F. Casey
Gregory G. Barnett
**CASEY & BARNETT, LLC**
305 Broadway, Ste 1202
New York, New York 10007
(212) 286-0225
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HDI GLOBAL SE a/s/o DAIMLER AG

                                     16 Civ.

        Plaintiff,

    - against -                        **COMPLAINT**

M/V COURAGE, her engines, tackle, boilers, etc.,
*in rem;* FIDELIO LIMITED PARTNERSHIP INC.;
AMERICAN ROLL-ON ROLL-OFF CARRIER
LLC; TOTE SERVICE INC.; GOVLOG NV and
FORD MOTOR COMPANY

        Defendant.
-------------------------------------------------------------X

      Plaintiff, HDI GLOBAL SE a/s/o DAIMLER AG, by and through its attorneys, Casey &

Barnett LLC, as and for its Complaint, alleges upon information and belief as follows:

### JURISDICTION

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and within the meaning of 28 U.S.C. § 1333.

      2.     Venue is proper and this Court has jurisdiction over the defendants on the basis of

their systematic and continuous business contacts and presence in the United States and this

District, as well as their status as parties to agreements providing for the selection of this Court

as a forum for resolution of disputes relating to the subject matter of this lawsuit.

**PARTIES**

3.      At all material times, HDI Global SE (hereinafter "HDI" or "Plaintiff") was and is a corporation with an office and place of business located at HDI-Platz 1, Hannover 30659 Germany and is the lead subrogated underwriter of a consignment of Mercedes Benz vehicles which suffered physical damage while laden on board the M/V COURAGE, as more specifically described below.

4.      At all material times, DAIMLER AG (hereinafter "Mercedes" or "Plaintiff") was and is a corporation with its principal place of business located at  Siemenstrasse 7, Stuttgart 70469 Germany and was the owner and/or shipper of various new vehicles laden aboard the captioned vessel, as more specifically described below, which suffered severe physical damage while on board the M/V COURAGE and which may be called upon by vessel interests to contribute in salvage and General Average expenses which may be assessed.

5.      At all material times, defendant, Fidelio Limited Partnership, Inc.. (hereinafter "Vessel Defendant" or "Fidelio") was and is a corporation with an office and place of business located at 188 Broadway, Suite 1, Woodcliff Lake, New Jersey 07677 and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court and was the registered owner of the captioned vessel.

6.      At all material times, defendant, American Roll-On Roll-Off Carrier LLC (hereinafter "Vessel Defendant" or "American Carrier") was and is a limited liability company with an office and place of business located at 1 Maynard Drive, 3rd Floor, Park Ridge, New Jersey 07656 and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court and was the beneficial owner and operator of the captioned vessel.

2

7.      At all material times, defendant, Tote Service Inc.   (hereinafter "Vessel Defendant" or "Tote") was and is a corporation with an office and place of business located at 10550 Deerwood Park Blvd, Suite 602, Jacksonville, FL 32225 and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court and was the technical manager of the captioned vessel.

8.      At all material times, defendant M/V COURAGE (hereinafter "the Vessel" or "Vessel Defendant") is an ocean going car carrier owned and operated by defendants, as more specifically described above, that carried vehicles which are the subject matter of this lawsuit, from Europe to the United States.

9.      At all material times, defendant, GovLog NV   (hereinafter "Cargo Shipper Defendant" or "GovLog") was and is a foreign corporation with an office and place of business located at Belcrowniaan 23, Antwerp 2100, Belgium and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a shipper of vehicles to the United States.

10.      At all material times, defendant, Ford Motor Company  (hereinafter "Defendant" or "Ford") was and is a corporation with an office and place of business located at One American Road, Dearborn, Michigan and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

11.      Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

3

## RELEVANT FACTS

12.     On or about June 1, 2015, a consignment consisting of 910 new Mercedes Benz vehicles, then being in good order and condition, were delivered to the M/V COURAGE and to the Vessel Defendants and/or their agents in Bremerhaven, Germany for transportation to Baltimore, Maryland, all in consideration of an agreed upon freight, pursuant to Wellenius Wilhelmsen Lines bill of lading number MCB515BAL01 dated June 1, 2015.

13.     Thereafter, the aforementioned consignment of vehicles were loaded aboard the M/V COURAGE and the vessel departed Bremerhaven in the early morning of June 2, 2015 destined for Southampton, United Kingdom and Baltimore, Maryland.

14.     On June 2, 2015 a fire broke out on board the subject vessel in the vicinity of car loading ramp of decks 08-10.

15.     The fire was put out by the vessel's crew utilizing the fire fighting system on board the vessel.

16.     After the fire was extinguished the vessel berthed in Southampton, England for investigation purposes. The vessel then returned to Bremerhaven, Germany.

17.     Certain of the Mercedes Benz vehicles were not in the same good order and condition when discharged as they had been when first delivered to the M/V COURAGE and the Vessel Defendants. To the contrary, it is currently estimated that 757 of said vehicles were physically damaged as a result of the fire.

18.     The value of the 757 Mercedes Benz vehicles which suffered physical damage is approximately €29,600,000.00, which is equivalent to approximately $33,100,000.00.

19.     Upon information and belief, the origin of the fire has been attributed to a 2002 Ford Escape, VIN number 1FMYU01BX2KD64419 that was carried on board the vessel

4

pursuant to Bill of Lading no. AROFBEANR005009 issued by American Roll-On Roll-Off Carrier, LLC and which bill of lading lists Cargo Shipper Defendant GovLog NV as the shipper of the said vehicle.

20.     Upon information and belief, the 2002 Ford Escape has been the subject of 10 separate recall notices. Two of the recall notices involved defects that had the potential to start a fire.

21.     Upon information and belief, the subject Ford vehicle had a design defect and that this design defect is believed to have been the origin of the fire.

22.     At all times relevant hereto, a contract of insurance for property damage was in effect between Mercedes and HDI, which provided coverage for, among other things, loss or damage to the subject Mercedes Benz vehicles.

23.     Pursuant to the aforementioned contract of insurance between Mercedes and HDI, monies have been expended on behalf of Mercedes to the detriment of HDI due to the damages sustained to the Mercedes Benz vehicles during the subject transit on board the M/V COURAGE.

24.     As HDI has sustained damages as a result of said expenditures, expenditures rightly the responsibility of defendants, HDI has an equitable right of subrogation and is subrogated, to the extent of its expenditures, to the rights of its insured, Mercedes Benz, with respect to any and all claims for damage against the defendants.

25.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $33,100,000.00.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST VESSEL DEFENDANTS-BREACH OF CONTRACT

26.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 25, inclusive, as if herein set forth at length.

27.     Pursuant to the contract entered into between the parties, Vessel Defendants owed a contractual and statutory duty to the Plaintiff, to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

28.     The Vessel Defendants breached their contractual and statutory duties by failing to properly care for, bail and protect the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

29.     As a direct and proximate result of said breach of contract by the Vessel Defendants, the Plaintiff has suffered damages in the amount presently estimated to be no less than $33,100,000.00.

30.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with more specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST VESSEL DEFENDANTS-BREACH OF BAILMENT

31.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 30, inclusive, as if herein set forth at length.

32.     Pursuant to its obligations as a bailee for hire of the Plaintiff's cargo, the Vessel Defendants owed contractual and statutory duties to Plaintiff to carry, bail, keep and care for,

protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

33.     The Vessel Defendants breached their duties as bailees for hire by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

34.     As a direct and proximate result of the breach of bailment by the Vessel Defendants, the Plaintiff has suffered damages in the approximate amount of $33,100,000.00.

35.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST VESSEL DEFENDANTS-NEGLIGENCE

36.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 35, inclusive, as if herein set forth at length.

37.     The Vessel Defendants owed a duty to the Plaintiff to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

38.     The Vessel Defendants breached and were negligent in their duty to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

39.     As a direct and proximate result of the negligence by the Vessel Defendants, the Plaintiff has suffered damages in the approximate amount of $33,100,000.00.

7

40.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST VESSEL DEFENDANTS - M/V COURAGE WAS UNSEAWORTHY

41.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 40, inclusive, as if herein set forth at length.

42.     Prior to, and at all times relevant hereto, the Vessel Defendants failed to exercise due diligence to make the M/V COURAGE seaworthy. The M/V COURAGE was at all relevant times not fit to undertake the service in which she was engaged. The losses suffered by or in connection with Plaintiff's cargo were caused in whole or in part by the Vessel Defendants' failure to exercise due diligence to make the M/V COURAGE seaworthy at the commencement of the voyage.

43.     The losses suffered by or in connection with Plaintiff's cargo, as well as the fire which occurred on board the vessel on June 2, 2015 off Southampton, England were caused in whole or in part by the fault, design or neglect, or want of care of the Vessel Defendants and/or the M/V COURAGE, and/or those in charge of the M/V COURAGE, and/or persons for whom Vessel Defendants are responsible.

44.     The losses suffered by or in connection with Plaintiff's cargo, as well as the subject casualty, resulted from causes within the privity and knowledge of the Vessel Defendants, and/or their officers, directors, managers, supervisors, superintendents and/or such persons whose privity and knowledge or imputable to the Vessel Defendants.

8

45.     As a direct and proximate result of the aforesaid unseaworthiness resulting from the Vessel Defendants actions, or failure to act, the Plaintiff has suffered damages in the approximate amount of $33,100,000.00.

46.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST CARGO SHIPPER GOVLOG - STRICT LIABILITY

47.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 46, inclusive, as if herein set forth at length.

48.     Defendant GovLog as a shipper of the aforesaid Ford Escape, had a statutory duty to other shippers of cargo laden on board the M/V COURAGE to ensure that the 2002 Ford Escape was in good order and condition in all respects for the transit from Germany to the United States.

49.     Defendant GovLog, as a cargo shipper, is strictly liable for any and all damages its cargo causes to other cargo properly laden on board the M/V COURAGE in that the 2002 Ford Escape is and was a "dangerous cargo" as that term is used in Section 4(6) of COGSA.

50.     Upon information and belief, the 2002 Ford Escape was in a defective condition at the time it was stowed on board the M/V COURAGE on or about May 29, 2015 in Antwerp, Belgium.

51.     The defects that existed in the 2002 Ford Escape rendered it to be an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and foreseeable third-party by-standers.

52.    Plaintiff Mercedes Benz suffered damages as a direct result of the fire caused by the defects that existed in the 2002 Ford Escape.

53.    As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $33,100,000.00.

54.    By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

<u>**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST FORD -**</u>
<u>**STRICT PRODUCTS LIABILITY**</u>

55.    The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 54, inclusive, as if herein set forth at length.

56.    At all times relevant to this action, Ford assembled, advertised, sold, distributed and/or otherwise placed into the market and stream of commerce a motor vehicle model which was intended to be used by members of the public and intended to be in locations accessed by the general public, including ocean going car carriers.

57.    By placing the Ford Escape model on the market, Ford represented that the product was safe for use by the general public and safe for those persons and property located in the vicinity of said product.

58.    Ford knew or should have known that Owners of vehicles subject to recall notices did not always respond to said notices.

59.    Ford had a duty to exercise reasonable care in the testing,  inspection and marketing of the subject vehicle model.

60.    The 2002 Ford Escape model vehicle, as designed and /or manufactured by Ford, was not reasonably fit, suitable or safe for its intended purpose or safe for the general public.

10

61.     The defects rendered the 2002 Ford Escape model an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and foreseeable by-standers. As a result, Ford is strictly liable in tort for the damages incurred by Mercedes Benz.

62.     On or about June 2, 2015, while the subject vehicle was being utilized in an appropriate manner and in a foreseeable location, the vehicle defect caused a fire, resulting in extensive damage to property owned by innocent third parties.

63.     The defect in the subject vehicle was the legal and proximate cause of the damage to Mercedes Benz's property.

64.     Ford breached its duty to market a safe product fit for its intended purpose and fit for use in foreseeable locations populated by innocent third parties and the property of innocent third parties.

65.     Ford is strictly liable for any and all defects in the subject 2002 Ford Escape that it manufactured, designed, sold, distributed and otherwise placed in the stream of commerce.

66.     The damage sustained by Mercedes Benz to its vehicles was caused by the carelessness and negligence of defendant Ford, without any negligence on the part of Plaintiff.

67.     As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $33,100,000.00.

68.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST FORD - NEGLIGENCE

69.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 68, inclusive, as if herein set forth at length.

70.     At all times relevant to this action, Ford assembled, advertised, sold, distributed and/or otherwise placed into the market and stream of commerce a motor vehicle model which was intended to be used by members of the public and intended to be in locations accessed by the general public, including ocean going car carriers.

71.     By placing the Ford Escape model on the market, Ford represented that the product was safe for use by the general public and safe for those persons and property located in the vicinity of said product.

72.     Ford knew or should have known that Owners of vehicles subject to recall notices did not always respond to said notices.

73.     Ford had a duty to exercise reasonable care in the testing, inspection and marketing of the subject vehicle model.

74.     The 2002 Ford Escape model vehicle, as designed and /or manufactured by Ford, was not reasonably fit, suitable or safe for its intended purpose or safe for the general public.

75.     The defects rendered the 2002 Ford Escape model an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and foreseeable by-standers. As a result, Ford was negligent and is responsible for the damages incurred by Mercedes Benz.

76.     On or about June 2, 2015, while the subject vehicle was being utilized in an appropriate manner and in a foreseeable location, the vehicle defect caused a fire, resulting in extensive damage to property owned by innocent third parties.

77.     The defect in the subject vehicle was the legal and proximate cause of the damage to Mercedes Benz's property.

78.     Ford breached its duty to market a safe product fit for its intended purpose and fit for use in foreseeable locations populated by innocent third parties and the property of innocent third parties.

79.     The damage sustained by Mercedes Benz to its vehicles was caused by the carelessness and negligence of defendant Ford, without any negligence on the part of Plaintiff.

80.     As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $33,100,000.00.

81.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.


**WHEREFORE,** Plaintiff prays:


1.     That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2.     That judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages in the amount of at least $33,100,000.00, together with interest, costs and the disbursements of this action; and

3.      That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
        June 2, 2016
        461-08

                                        **CASEY & BARNETT, LLC**
                                        Attorneys for Plaintiff

                                  By:   _Martin F. Casey_
                                        Martin F. Casey
                                        Gregory G. Barnett
                                        305 Broadway, Ste 1202
                                        New York, New York 10007
                                        (212) 286-0225

14