Martin F. Casey
Gregory G. Barnett
**CASEY & BARNETT, LLC**
305 Broadway, Ste 1202
New York, New York 10007
(212) 286-0225
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HDI GLOBAL SE a/s/o DAIMLER AG

           Plaintiff,

     - against -

M/V COURAGE, her engines, tackle, boilers, etc.,
*in rem;* FIDELIO LIMITED PARTNERSHIP INC.;
AMERICAN ROLL-ON ROLL-OFF CARRIER
LLC; TOTE SERVICE INC.; GOVLOG NV;
UNITED STATES OF AMERICA and FORD
MOTOR COMPANY

           Defendants.
-------------------------------------------------------------X

16 Civ. 4125 (JMF)

**THIRD AMENDED
COMPLAINT**

       Plaintiff, HDI GLOBAL SE a/s/o DAIMLER AG, by and through its attorneys, Casey &

Barnett LLC, as and for its Second Amended Complaint, alleges upon information and belief as

follows:

**JURISDICTION**

       1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and within the meaning of 28 U.S.C. § 1333, 28 U.S.C. § 1367

and ¶ 5 of the American Roll-On Roll-Off Carrier LLC bill of Lading issued to GovLog NV. In

addition, the Court has jurisdiction over the subject matter of this action as it pertains to

defendant United States of America pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30901 *et*

*seq.* in that Mary Smith was acting within the scope of her employment with the United States of America when she booked her Ford Escape vehicle, as described in greater detail below, for transit aboard the M/V COURAGE from Europe to the United States.

2.      Venue is proper and this Court has jurisdiction over the defendants on the basis of their systematic and continuous business contacts and presence in the United States and this District, as well as their status as parties to contracts of carriage which provide for the selection of this Court as the exclusive forum for resolution of disputes relating to the carriage of, *inter alia,* the Ford Escape, from Europe to the United States.

## **PARTIES**

3.      At all material times, HDI Global SE (hereinafter "HDI" or "Plaintiff") was and is a corporation with an office and place of business located at HDI-Platz 1, Hannover 30659 Germany and is the lead subrogated underwriter of a consignment of Mercedes Benz vehicles which suffered physical damage while laden on board the M/V COURAGE, as more specifically described below.

4.      At all material times, DAIMLER AG (hereinafter "Mercedes" or "Plaintiff") was and is a corporation with its principal place of business located at  Siemenstrasse 7, Stuttgart 70469 Germany and was the owner and/or shipper of various new vehicles laden aboard the captioned vessel, as more specifically described below, which suffered severe physical damage while on board the M/V COURAGE and which may be called upon by vessel interests to contribute in salvage and General Average expenses which may be assessed.

5.      At all material times, defendant, Fidelio Limited Partnership, Inc. (hereinafter "Vessel Defendant" or "Fidelio") was and is a corporation with an office and place of business located at 188 Broadway, Suite 1, Woodcliff Lake, New Jersey 07677 and at all relevant times,

was and is still doing business within the jurisdiction of this Honorable Court and was the registered owner of the captioned vessel.

6.     At all material times, defendant, American Roll-On Roll-Off Carrier LLC (hereinafter "Vessel Defendant" or "American Carrier") was and is a limited liability company with an office and place of business located at 1 Maynard Drive, 3rd Floor, Park Ridge, New Jersey 07656 and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court and was the beneficial owner and operator of the captioned vessel.

7.     At all material times, defendant, Tote Service Inc.   (hereinafter "Vessel Defendant" or "Tote") was and is a corporation with an office and place of business located at 10550 Deerwood Park Blvd, Suite 602, Jacksonville, FL 32225 and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court and was the technical manager of the captioned vessel.

8.     At all material times, defendant M/V COURAGE (hereinafter "the Vessel" or "Vessel Defendant") is an ocean going car carrier owned and operated by defendants, as more specifically described above, that carried vehicles which are the subject matter of this lawsuit, from Europe to the United States.

9.     At all material times, defendant, GovLog NV   (hereinafter "Cargo Shipper Defendant" or "GovLog") was and is a foreign corporation with an office and place of business located at Belcrowniaan 23, Antwerp 2100, Belgium and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a shipper of vehicles to the United States.

10.     At all material times, defendant, United States of America (hereinafter "Cargo Shipper Defendant" or "USA") is a sovereign entity and, at all material times, was the employer

3

of Mary Smith, a United States citizen. Mary Smith was the owner of the Ford Escape discussed in further detail below. The USA has an address c/o the United States Attorney's Office for the Southern District of New York, One St. Andrew's Plaza, New York, New York 10007.

11.     At all material times, defendant, Ford Motor Company  (hereinafter "Defendant" or "Ford") was and is a Delaware corporation with its principal office and place of business located at One American Road, Dearborn, Michigan and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

12.     Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

## RELEVANT FACTS

13.     On or about June 1, 2015, a consignment consisting of 910 new Mercedes Benz vehicles, then being in good order and condition, were delivered to the M/V COURAGE and to the Vessel Defendants and/or their agents in Bremerhaven, Germany for transportation to Baltimore, Maryland, all in consideration of an agreed upon freight, pursuant to Wellenius Wilhelmsen Lines bill of lading number MCB515BAL01 dated June 1, 2015.

14.     Thereafter, the aforementioned consignment of vehicles were loaded aboard the M/V COURAGE and the vessel departed Bremerhaven in the early morning of June 2, 2015 destined for Southampton, United Kingdom and Baltimore, Maryland.

15.     On June 2, 2015 a fire broke out on board the subject vessel in the vicinity of car loading ramp of decks 08-10.

16.     The fire was put out by the vessel's crew utilizing the fire fighting system on board the vessel.

4

17.     After the fire was extinguished the vessel berthed in Southampton, England for investigation purposes. The vessel then returned to Bremerhaven, Germany.

18.     Certain of the Mercedes Benz vehicles were not in the same good order and condition when discharged as they had been when first delivered to the M/V COURAGE and the Vessel Defendants. To the contrary, it is currently estimated that 757 of the Mercedes Benz vehicles were physically damaged as a result of the fire.

19.     The value of the 757 Mercedes Benz vehicles which suffered physical damage is approximately €29,600,000.00, which is equivalent to approximately $33,100,000.00.

20.     Upon information and belief, the origin of the fire has been attributed to a 2002 Ford Escape owned by defendant Mary Smith, VIN number 1FMYU01BX2KD64419 (the "Subject Ford Vehicle") that was carried on board the vessel pursuant to Bill of Lading no. AROFBEANR005009 issued by Defendant American Roll-On Roll-Off Carrier, LLC to Cargo Shipper Defendant GovLog NV, the shipper of the Subject Ford Vehicle.

21.     Upon information and belief, GovLog prepared and/or consented to the issuance of ARC bill of Lading no. AROFBEANR005009, which named GovLog as shipper and Mary Smith as consignee. ARC Bill of Lading AROFBEANR005009 contained, among other terms and conditions, the following clauses:

> 2. Definitions.
> "Merchant includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this B/L and the Owner of the Goods.
>
> 5. Jurisdiction.
> **Any dispute under this B/L shall be decided in the U.S. Federal Court in the City of New York to the exclusive jurisdiction of which the Carrier and Merchant submits themselves**. No proceedings may be brought before other courts unless the parties expressly agree on both the choice of another court or arbitration tribunal and the law to be then applicable or unless the Merchant is otherwise entitled to do so by compulsory law. (emphasis added).

20. Dangerous Cargo.

Goods of an inflammable, explosive or dangerous nature to the shipment and radioactive material whereof the Carrier, Master or Agent of the Carrier has not consented, with knowledge of their nature and character, may at any time before discharge be landed at any place or destroyed or rendered innocuous, by the Carrier without compensation and without prejudice to the Carrier's right to collect freight thereon, **and the Merchant (whether aware of their nature or not) shall be liable for all damages and expenses directly or indirectly arising out of or resulting from such shipment** and shall defend, indemnify and hold harmless the carrier... (emphasis added).

22.     As a party to the maritime venture that was the voyage of the M/V COURAGE at issue, Daimler AG was an intended beneficiary of all terms and conditions of the bills of lading issued to other shippers of motor vehicles on board the Vessel, including ARC Bill of Lading no. AROFBEANR005009.

23.     By preparing and / or agreeing to the terms and conditions of ARC Bill of Lading no. AROFBEANR005009, GovLog, for itself and for Mary Smith, consented to the exclusive jurisdiction of this Court for all claims arising out of the voyage of the M/V COURAGE at issue, including Daimler's claim for damage directly arising out of the dangerous nature of GovLog's cargo.

24.     Mary Smith was acting within the course and scope of her employment with the United States of America at the time she booked transit of the Subject Ford Vehicle from Europe to the United States.

25.     Under the Suits in Admiralty Act, 46 U.S.C. § 30901, *et seq.,* USA is the exclusive and proper defendant in connection with all claims against Mary Smith related to the shipment of the Subject Ford Vehicle.

26.     USA has agreed to be and is liable for all acts and omissions of its employee, Mary Smith, relating to the shipment of the Subject Ford Vehicle from Antwerp to Baltimore in May-June 2015.

27.     USA is also bound by the terms and conditions of the bill of lading that was issued for shipment of the Subject Ford Vehicle and is responsible for any breaches of applicable statutes by its employee, Mary Smith.

28.     The 2002 model Ford Escape has been the subject of 10 separate recall notices. Two of the recall notices involved defects that had the potential to start a fire.

29.     Upon information and belief, at the time of the subject voyage, Mary Smith, the owner of the Subject Ford Vehicle, had failed to act on the aforesaid recall notices issued by Ford, including the two recall notices that advised of defects that had the potential to start a fire.

30.     Upon information and belief, neither GovLog nor Mary Smith took sufficient action to address the defects identified in the recall notices or otherwise properly maintain the Subject Ford Vehicle.

31.     Upon information and belief, at the time Mary Smith booked transit of her Subject Ford Vehicle, Mary Smith failed to inform defendants GovLog and Vessel Interests that she had failed to act on the recall notices issued by Defendant Ford and that, in its current condition, the Subject Ford Vehicle was a dangerous cargo in that it had the ability to cause a fire.

32.     Upon information and belief, neither GovLog nor Mary Smith made sufficient efforts to inspect the Subject Ford Vehicle or verify its condition prior to shipment on board the M/V COURAGE.

33.     The subject Ford vehicle had a design defect and/or manufacturing defect, which triggered and/or caused the fire on board the M/V COURAGE.

7

34.     The losses sustained by Plaintiff were not the result of any act or omission on the part of the Plaintiff but, to the contrary, were due solely as a result of (i) the negligence, fault, neglect, breach of contract, breach of bailment of the *in personam* defendants and/or (ii) the unseaworthiness of the M/V COURAGE which was discoverable by the exercise of due diligence and/or (iii) the defective Subject Ford Vehicle.

35.     At all times relevant hereto, a contract of insurance for property damage was in effect between Mercedes and HDI, which provided coverage for, among other things, loss or damage to the subject Mercedes Benz vehicles.

36.     Pursuant to the aforementioned contract of insurance between Mercedes and HDI, monies have been expended on behalf of Mercedes to the detriment of HDI due to the damages sustained to the Mercedes Benz vehicles during the subject transit on board the M/V COURAGE.

37.     As HDI has sustained damages as a result of said expenditures, expenditures rightly the responsibility of defendants, HDI has an equitable right of subrogation and is subrogated, to the extent of its expenditures, to the rights of its insured, Mercedes Benz, with respect to any and all claims for damage against the defendants.

38.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $33,100,000.00.

**<u>AS AND FOR A FIRST CAUSE OF ACTION AGAINST VESSEL<br>DEFENDANTS - BREACH OF CONTRACT</u>**

39.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 38, inclusive, as if herein set forth at length.

40.     Pursuant to the contract entered into between the parties, Vessel Defendants owed a contractual and statutory duty to the Plaintiff, to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

41.     The Vessel Defendants breached their contractual and statutory duties by failing to properly care for, bail and protect the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

42.     As a direct and proximate result of said breach of contract by the Vessel Defendants, the Plaintiff has suffered damages in the amount presently estimated to be no less than $33,100,000.00.

43.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with more specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST VESSEL DEFENDANTS - BREACH OF BAILMENT

44.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 43, inclusive, as if herein set forth at length.

45.     Pursuant to its obligations as a bailee for hire of the Plaintiff's cargo, the Vessel Defendants owed contractual and statutory duties to Plaintiff to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

46.     The Vessel Defendants breached their duties as bailees for hire by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

47.     As a direct and proximate result of the breach of bailment by the Vessel Defendants, the Plaintiff has suffered damages in the approximate amount of $33,100,000.00.

48.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST VESSEL DEFENDANTS - NEGLIGENCE

49.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 48, inclusive, as if herein set forth at length.

50.     The Vessel Defendants owed a duty to the Plaintiff to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

51.     The Vessel Defendants breached and were negligent in their duty to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said defendant first accepted custody and control of the goods.

52.     As a direct and proximate result of the negligence by the Vessel Defendants, the Plaintiff has suffered damages in the approximate amount of $33,100,000.00.

53.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST VESSEL DEFENDANTS - M/V COURAGE WAS UNSEAWORTHY

54.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 53, inclusive, as if herein set forth at length.

10

55.     Prior to, and at all times relevant hereto, the Vessel Defendants failed to exercise due diligence to make the M/V COURAGE seaworthy. The M/V COURAGE was at all relevant times not fit to undertake the service in which she was engaged. The losses suffered by or in connection with Plaintiff's cargo were caused in whole or in part by the Vessel Defendants' failure to exercise due diligence to make the M/V COURAGE seaworthy at the commencement of the voyage.

56.     The losses suffered by or in connection with Plaintiff's cargo, as well as the fire which occurred on board the vessel on June 2, 2015 off Southampton, England were caused in whole or in part by the fault, design or neglect, or want of care of the Vessel Defendants and/or the M/V COURAGE, and/or those in charge of the M/V COURAGE, and/or persons for whom Vessel Defendants are responsible.

57.     The losses suffered by or in connection with Plaintiff's cargo, as well as the subject casualty, resulted from causes within the privity and knowledge of the Vessel Defendants, and/or their officers, directors, managers, supervisors, superintendents and/or such persons whose privity and knowledge or imputable to the Vessel Defendants.

58.     As a direct and proximate result of the aforesaid unseaworthiness resulting from the Vessel Defendants actions, or failure to act, the Plaintiff has suffered damages in the approximate amount of $33,100,000.00.

59.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST CARGO
## SHIPPER GOVLOG - STRICT LIABILITY

60.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 59, inclusive, as if herein set forth at length.

61.     Defendant GovLog, as the shipper of the Subject Ford Vehicle, had a statutory duty to other shippers of cargo laden on board the M/V COURAGE to ensure that the Subject Ford Vehicle was in good order and condition in all respects for the transit from Belgium to the United States.

62.     Upon information and belief, the Subject Ford Vehicle was in a defective condition at the time it was stowed on board the M/V COURAGE on or about May 29, 2015 in Antwerp, Belgium.

63.     Defendant Ford had issued 10 separate recall notices on the 2002 model Ford Escape. Two of these recall notices involved defects that had the potential to start a fire.

64.     Mary Smith had failed to act on any of the recall notices, and more specifically, had failed to act on the two recall notices involving defects in the 2002 model Ford Escape that had the potential to start and/or cause a fire.

65.     Neither GovLog nor Mary Smith took sufficient action to address the defects identified in the recall notices or otherwise properly maintain the Subject Ford Vehicle.

66.     Neither GovLog nor Mary Smith made sufficient efforts to inspect the Subject Ford Vehicle or verify its condition prior to shipment on board the M/V COURAGE.

67.     The defects that existed in the 2002 Ford Escape rendered it to be an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and foreseeable third-party by-standers.

68.     Defendant GovLog, as a cargo shipper, is strictly liable for any and all damages its cargo causes to other cargo properly laden on board the M/V COURAGE in that the 2002 Ford Escape is and was a "dangerous cargo" as that term is used in Section 4(6) of COGSA.

69.     Plaintiff Mercedes suffered damages as a direct result of the fire caused by the defects that existed in the 2002 Ford Escape.

70.     As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $33,100,000.00.

71.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST CARGO SHIPPER GOVLOG - NEGLIGENCE

72.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 71, inclusive, as if herein set forth at length.

73.     Defendant Ford had issued 10 separate recall notices on the 2002 model Ford Escape. Two of these recall notices involved defects that had the potential to start a fire.

74.     GovLog, prior to contracting to have the Subject Ford Vehicle transported from Europe to the United States on board the M/V COURAGE, failed to investigate whether the vehicle was subject to any recall notices and failed to investigate whether the vehicle owner had complied with the Ford recall notices.

75.     Absent Mary Smith's confirmation that the Subject Ford Vehicle had been repaired in accordance with the Ford recall notices, GovLog had a duty to either (i) deny the booking of the vehicle on board the M/V COURAGE or (ii) notify Defendant Vessel Interests at

the time of booking that it could not verify that  the vehicle owner had complied with the Ford recall notices and that the vehicle therefore should be classified as a dangerous cargo.

76.     Neither GovLog nor Mary Smith took sufficient action to address the defects identified in the recall notices or otherwise properly maintain the Subject Ford Vehicle.

77.     Neither GovLog nor Mary Smith made sufficient efforts to inspect the Subject Ford Vehicle or verify its condition prior to shipment on board the M/V COURAGE.

78.     The defects that existed in the 2002 model Ford Escape, as set forth in the Ford recall notices, rendered it to be an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and to foreseeable third-party by-standers.

79.     GovLog breached it duty by failing to inform the Defendant Vessel Interests at the time the Subject Ford Vehicle was booked for transit on board the M/V COURAGE (i) that the subject Ford Vehicle had been the subject of 10 recall notices issued by Ford, including two that had the potential to cause and/or start a fire; (ii) that the vehicle owners had failed to take any action to cure the defects in the Subject Ford Vehicle as set forth in the various Ford recall notices; (iii) that the vehicle, as manufactured by Ford and based upon the various recall notices issued by Ford was a dangerous product, fraught with unexpected dangers to foreseeable users and to foreseeable third-party by-standers, such as plaintiff herein.

80.     Plaintiff Mercedes suffered damages as a direct result of the fire caused by the defects that existed in the Subject Ford Escape vehicles, damages that arose directly from GovLog's breach of its aforesaid duty.

81.     As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $33,100,000.00.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST
UNITED STATES OF AMERICA - STRICT LIABILITY**

82.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 81, inclusive, as if herein set forth at length.

83.     At all material times, Defendant USA was the employer of Mary Smith. Mary Smith was acting within the course and scope of her employment in booking her Subject Ford Escape vehicle for transit on board the M/V COURAGE from Europe to the United States on the subject voyage. The Suits in Admiralty Act mandates that the USA is the exclusive defendant in any admiralty action that implicates its employees and the USA is vicariously liable for the acts and omissions of its employee, Mary Smith.

84.     Defendant USA had a contractual relationship with GovLog wherein, *inter alia*, GovLog would arrange for shipment of government employee's vehicles from Belgium to the United States.

85.     Upon information and belief, pursuant to the terms of the GovLog-USA contract, GovLog booked Mary Smith's vehicle with the ocean carrier and was listed as the cargo shipper rather than Mary Smith. This arrangement created an agent- undisclosed principal relationship between GovLog and the government employee.

86.     Mary Smith, as the actual shipper and / or the owner of the Subject Ford Escape Vehicle, had a statutory duty to other shippers of cargo laden on board the M/V COURAGE to ensure that the Subject Ford Escape Vehicle was in good order and condition in all respects for the transit from Belgium to the United States.

87.     Upon information and belief, the Subject Ford Escape Vehicle was in a defective condition at the time it was stowed on board the M/V COURAGE on or about May 29, 2015 in Antwerp, Belgium.

15

88.     Defendant Ford had issued 10 separate recall notices on the 2002 model Ford Escape. Two of these recall notices involved defects that had the potential to start a fire.

89.     Mary Smith failed to act on any of the recall notices, and more specifically, had failed to address the two recall notices involving defects in the 2002 model Ford Escape that had the potential to start and/or cause a fire.

90.     Mary Smith failed to take sufficient action to address the defects identified in the Ford recall notices or otherwise properly maintain the Subject Ford Vehicle.

91.     Mary Smith failed to make sufficient efforts to inspect the Subject Ford Vehicle or verify its condition prior to shipment on board the M/V COURAGE.

92.     Mary Smith failed to act on any of the recall notices, and more specifically, had failed to act on the two recall notices involving defects in the 2002 model Ford Escape that had the potential to start and/or cause a fire.

93.     The defects that existed in the 2002 model Ford Escape, as set forth in the Ford recall notices, rendered it to be an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and to foreseeable third-party by-standers, such as plaintiff herein.

94.     Mary Smith, as the cargo shipper and / or cargo owner, is strictly liable for any and all damages her cargo caused to other cargo properly laden on board the M/V COURAGE in that the Subject Ford Escape Vehicle is and was a "dangerous cargo" as that term is used in Section 4(6) of COGSA.

95.     Defendant, USA, is responsible under the Suits in Admiralty Act for the damages resulting from Mary Smith's actions in breaching the terms and obligations of Section 4(6) of COGSA.

16

96.     Plaintiff, Mercedes, suffered damages as a direct result of the fire caused by the defects that existed in the Subject 2002 Ford Escape Vehicle.

97.     As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $33,100,000.00.

98.     By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

**AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST**
**UNITED STATES OF AMERICA - NEGLIGENCE**

99.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 98, inclusive, as if herein set forth at length.

100.    At all material times, Defendant USA was the employer of Mary Smith. Mary Smith was acting within the course and scope of her employment in booking her Subject Ford Escape Vehicle for transit on board the M/V COURAGE from Europe to the United States on the subject voyage. The Suits in Admiralty Act mandates that the USA is the exclusive defendant in any admiralty action that implicates its employees and the USA is vicariously liable for the acts and omissions of its employee, Mary Smith.

101.    Defendant Ford had issued 10 separate recall notices on the 2002 model Ford Escape. Two of these recall notices involved defects that had the potential to start a fire.

102.    Mary Smith failed to act on any of the recall notices, and more specifically, had failed to act on the two recall notices involving defects in the 2002 model Ford Escape that had the potential to start and/or cause a fire.

103.    The defects that existed in the 2002 model Ford Escape, as set forth in the Ford recall notices, rendered it to be an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and to foreseeable third-party by-standers.

104.    Mary Smith failed to inform defendants GovLog and Vessel Interests at the time the Subject Ford Vehicle was booked for transit on board the M/V COURAGE that (i) the subject Ford Vehicle had been the subject of 10 recall notices issued by Ford, including two that had the potential to cause and/or start a fire; (ii) she had failed to take any action to cure the defects in the Subject Ford Vehicle as set forth in the various Ford recall notices; (iii) the vehicle, as manufactured by Ford and based upon the various recall notices issued by Ford was a dangerous product, fraught with unexpected dangers to foreseeable users and to foreseeable third-party by-standers, such as plaintiff herein.

105.    Mary Smith's omissions, as set forth in Paragraph 80, *supra,* are acts of negligence for which the defendant, USA, is vicariously liable pursuant to the provisions of the Suits in Admiralty Act.

106.    Plaintiff Mercedes, suffered damages as a direct result of the fire caused by the defects that existed in the Subject 2002 Ford Escape Vehicle.

107.    As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $33,100,000.00.

108.    By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR AN NINTH CAUSE OF ACTION AGAINST FORD - STRICT PRODUCTS LIABILITY

109.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 108, inclusive, as if herein set forth at length.

110.     At all times relevant to this action, Ford assembled, advertised, sold, distributed and/or otherwise placed into the market and stream of commerce the 2002 model Ford Escape, a motor vehicle model that was intended to be used by members of the public and intended to be in locations accessed by the general public and/or in locations in the immediate vicinity of other motor vehicles, including on board ocean going car carriers.

111.     At all times relevant to this action, Ford had a duty to design, manufacture and market vehicles in a responsible and safe way so as not to cause injury or damage to innocent third parties and property owned by innocent third parties, such as Mercedes, or members of the general public.

112.     At all times relevant to this action, Ford had a continuing duty to provide adequate warnings to owners of vehicles that it manufactured and to members of the general public regarding any defects or conditions with vehicles it manufactured that posed risk of injury or damage.

113.     At all times relevant to this action, Ford had a continuing duty to monitor the performance and safety of vehicles that it manufactured and adequately repair or remedy any conditions that posed risk of danger or injury.

114.     Ford designed and/or manufactured a 2002 Ford Escape bearing VIN number IFMYU01BX2KD64419, the Subject Ford Vehicle.

115.    By placing the 2002 Ford Escape model on the market, Ford represented that the product was safe for use by the general public and safe for those persons and property located in the general and/or immediate vicinity of said product.

116.    Ford knew or should have known that Owners of vehicles subject to recall notices did not always respond to said notices.

117.    Ford had a duty to exercise reasonable care in the design, manufacture, testing, inspection and marketing of the 2002 Ford Escape model, including the Subject Ford Vehicle.

118.    Ford had a duty to provide adequate warnings to any owners, users, carriers, operators, and/or other parties potentially subject to injury by the ordinary use, storage or handling of the 2002 Ford Escape model, including the Subject Ford Vehicle, of any potentially dangerous conditions associated with the use, storage or handling of said 2002 Ford Escape model.

119.    The 2002 Ford Escape model vehicle, including the Subject Ford Vehicle, as designed and /or manufactured by Ford, was not reasonably fit, suitable or safe for its intended purpose or safe for the general public, and was otherwise defective, as it had a dangerous propensity to ignite and catch fire due to one or more of the following conditions.

120.    The ABS module connector had wire seals that allowed contamination to enter the module, creating a potential for an electrical short and rendering the ABS module connector, and hence the Subject Ford Vehicle, defective and/or unreasonable dangerous.

121.    The master cylinder was susceptible to leaks that could result in fluid coming into contact with the ABS module wire harness connector.

122.    The defects rendered the 2002 Ford Escape model, including the Subject Ford Vehicle, an unreasonably dangerous product, fraught with unexpected dangers to foreseeable

users and foreseeable by-standers. As a result, Ford is strictly liable in tort for the damages incurred by Mercedes.

123.    On or about June 2, 2015, while the Subject Ford Vehicle was being utilized in an appropriate manner and in a foreseeable location on board the M/V COURAGE, the vehicle defect and/or defects caused a fire, resulting in extensive damage to property owned by innocent third parties.

124.    The defect in the Subject Ford Vehicle was the legal and proximate cause of the damage to Mercedes' property.

125.    Ford breached its duty to market a safe product fit for its intended purpose and fit for use in foreseeable locations populated by innocent third parties and the property of innocent third parties.

126.    Ford breached its duties in connection with the design, manufacture, marketing, sale and/or distribution of the Subject Ford Vehicle by failing to provide adequate warnings about the dangerous condition(s) of the Subject Ford Vehicle.

127.    Ford is strictly liable for any and all defects in the Subject Ford Vehicle, which it manufactured, designed, sold, distributed and otherwise placed in the stream of commerce.

128.    The damage sustained by Mercedes to its vehicles was caused by the carelessness, negligence and/or otherwise legally culpable conduct of defendant Ford, without any negligence on the part of Plaintiff, for defectively designing and/or manufacturing the Subject Ford Vehicle, and for selling an unreasonably dangerous product without adequate warnings.

129.    As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $33,100,000.00.

130.    By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

## AS AND FOR A TENTH CAUSE OF ACTION AGAINST
## FORD - NEGLIGENCE

131.    The Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 130, inclusive, as if herein set forth at length.

132.    At all times relevant to this action, Ford assembled, advertised, sold, distributed and/or otherwise placed into the market and stream of commerce a motor vehicle model which was intended to be used by members of the public and intended to be in locations accessed by the general public, including on board ocean going car carriers.

133.    By placing the 2002 Ford Escape model on the market, Ford represented that the product was safe for use by the general public and safe for those persons and property located in the vicinity of said product.

134.    The 2002 Ford Escape model vehicle, including the Subject Ford Vehicle, as designed and/or manufactured by Ford, was not reasonably fit, suitable or safe for its intended purpose or safe for the general public, and was otherwise defective, as it had a dangerous propensity to ignite and catch fire due to one or more of the following conditions.

135.    The ABS module connector had wire seals that allowed contamination to enter the module, creating a potential for an electrical short and rendering the ABS module connector, and hence the Subject Ford Vehicle, defective and /or unreasonably dangerous.

136.    The master cylinder was susceptible to leaks that could result in fluid coming into contact with the ABS module wiring harness connector.

137.   Ford issued a recall notice on April 11, 2007, in connection with the ABS module connector in the Ford Escape ("ABS Module Recall"), which identified the hazard as follows:

"AN ELECTRICAL SHORT MIGHT CAUSE AN ABS MALFUNCTION THAT WOULD ILLUMINATE THE ABS WARNING LIGHT, AND IN SOME CASES, THE MODULE MAY OVERHEAT RESULTING IN BURNING ODOR, SMOKE, AND/OR FIRE. THIS CONDITION COULD OCCUR EITHER WHEN THE VEHICLE IGNITION SWITCH IS IN THE OFF POSI

138.   Ford issued a recall notice on January 9, 2012, in connection with the defective master cylinder in the Ford Escape ("Master Cylinder Recall"), which identified the hazard as follows:

"CORROSION CAN DEVELOP IN THE ELECTRICAL CONNECTOR LEADING TO MELTING, SMOKE OR A FIRE."

139.   Ford knew or should have known that recall notices are ineffective to notify users, ultimate users, and the general public regarding defects in the vehicles that it manufactured which posed risk of damage or injury.

140.   Ford made inadequate efforts to notify users, ultimate users, and/or the general public regarding defects or conditions with the Subject Ford Vehicle that posed risk of injury or damage.

141.   Ford made inadequate efforts to remedy the defects in the Ford Escape, including but not limited to the defects associated with the ABS module connector and the master cylinder.

142.    Ford had a duty to exercise reasonable care in the testing,  inspection and marketing of the 2002 Ford Escape model.

143.    The 2002 Ford Escape model vehicle was negligently designed and/or manufactured by Ford, in that a condition likely to cause fire while the model vehicle was subject to its expected and/or foreseeable use was caused and/or permitted to exist, such that the 2002 Ford Escape model was not reasonably fit, suitable or safe for its intended purpose or safe for the general public.

144.    The defects rendered the 2002 Ford Escape model an unreasonably dangerous product, fraught with unexpected dangers to foreseeable users and foreseeable by-standers. As a result, Ford was negligent and is responsible for the damages incurred by Mercedes.

145.    On or about June 2, 2015, while the Subject Ford Vehicle was being utilized and/or parked in an appropriate manner and in a foreseeable location on board the M/V COURAGE, the Vehicle defect caused a fire, resulting in extensive damage to property owned by innocent third parties, including the plaintiff herein.

146.    The defect in the subject vehicle was the legal and proximate cause of the damage to Mercedes' property.

147.    Ford negligently breached its duty to market a safe product fit for its intended purpose and fit for use in foreseeable locations populated by innocent third parties and the property of innocent third parties.

148.    The damage sustained by Mercedes to its vehicles was caused by the carelessness, negligence and/or otherwise legally culpable conduct of defendant Ford, without any negligence on the part of Plaintiff.

149.    As a proximate result of the foregoing, Plaintiff has sustained damages in the amount of no less than $33,100,000.00.

150.    By reason of the foregoing, the Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $33,100,000.00.

**WHEREFORE,** Plaintiff prays:

1.    That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2.    That judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages in the amount of at least $33,100,000.00, together with interest, costs and the disbursements of this action; and

3.    That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
         January 6, 2017
         461-08

                              **CASEY & BARNETT, LLC**
                              Attorneys for Plaintiff

                    By:    ___/s/ Martin F. Casey_____
                              Martin F. Casey
                              Gregory G. Barnett
                              305 Broadway, Ste 1202
                              New York, New York 10007
                              (212) 286-0225

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing *Third Amended Complaint* has

been forwarded to defendants via ECF and email on this 6th  day of January, 2017 as follows:

Fidelio Limited Partnership, Inc.
American Roll-On Roll-Off Carrier LLC
Tote Service Inc.
c/o Freehill Hogan & Mahar
Attn: Wayne Meehan
80 Pine Street
New York, New York 10006
meehan@freehill.com

GovLog NV
c/o Cozen O'Connor
Attn: David Loh
45 Broadway, Ste 1600
New York, New York 10006
dloh@cozen.com

Ford Motor Company
c/o Dykema Gossett PLLC
Attn: James P. Feeney
39577 Woodward Avenue, Ste 300
Bloomfield Hills, MI 48304
jfeeney@dykema.com

United States of America
c/o US Dept of Justice
Attn: Douglas M. Hottle
PO Box 14271
Washington DC 20004-4271
douglas.hottle@usdoj.gov

**CASEY & BARNETT, LLC**
Attorneys for Plaintiff

By:  *    /s/ Martin F. Casey            *
Martin F. Casey
305 Broadway, Suite 1202
New York, New York 10007
(212) 286-0225

26